UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **PALOMAR MEDICAL TECHNOLOGIES, INC. and** ) | |
| **THE GENERAL HOSPITAL CORPORATION,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **1:06-CV-11171 (RWZ)** |
| ) | |
| **ALMA LASERS, INC.** ) | **JURY DEMANDED** |
| ) | |
| **Defendant.** ) | |
| _____) | |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.  This is an action for patent infringement arising under the patent laws of the United

States, Title 35 of the United States Code and trade dress infringement in violation of Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### PARTIES

2.      Plaintiff Palomar Medical Technologies, Inc. ("Palomar") is a Delaware

corporation with a principal place of business at 82 Cambridge Street, Burlington, Massachusetts

01803.

3.      Plaintiff The General Hospital Corporation is a Massachusetts not-for-profit

corporation doing business as the Massachusetts General Hospital ("MGH") with a principal

place of business at 55 Fruit Street, Boston, Massachusetts 02114.

US1DOCS 6064801v1

4.   Upon information and belief, Defendant Alma Lasers, Inc. ("Alma") is a Delaware corporation, with a principal place of business at 485 Half Day Road #100, Buffalo Grove, Illinois, 60089.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Palomar and MGH's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this District under 28 U.S.C. §§ 1400(b).  Alma has transacted business and committed acts of infringement in this District, and this action arises from the transaction of that business and infringement.

## FACTUAL BACKGROUND

### I.      Palomar and the Palomar Trade Dress

7.      Palomar was founded in 1991 by a group of scientists with the objective of designing and developing laser systems for medical applications.  Beginning in approximately 1993, Palomar began to focus on the development of laser systems for aesthetic applications such as skin resurfacing, removal of pigmented and vascular lesions, and tattoo removal.  Since then, Palomar has designed and developed a variety of laser and high-powered lamp-based systems for many aesthetic applications, including hair removal, fractional skin resurfacing, photofacials for pigmented and vascular lesion treatment, fractional skin tightening, leg vein removal, acne treatment, and tattoo removal.

8.      In 1995, Palomar entered into a partnership with experts at Massachusetts General Hospital ("MGH") to develop a revolutionary technology for light-based hair removal initially

- 2 -

invented and patented by MGH.  As part of this relationship, Palomar became the exclusive licensee of U.S. Patent No. 5,595,568 ("the '568 patent"), entitled "Permanent Hair Removal Using Optical Pulses," and U.S. Patent No. 5,735,844 ("the "844 patent"), entitled "Hair Removal Using Optical Pulses."

9.      Palomar invested millions of dollars to further develop the MGH technology and to conduct clinical trials of the technology, and to obtain approval to market and sell devices using the technology from the United States Food and Drug Administration ("FDA").

10.      Palomar introduced the first high-powered laser hair removal system in 1996, and, in 1997, became the first company to obtain FDA clearance to market and sell such systems for hair removal.  Palomar also was the first company to obtain FDA clearance to market and sell lasers for permanent hair reduction in 1998.

11.      In 2001, Palomar introduced the EsteLux® Pulsed Light System.  Two years later, in 2003, it introduced the higher-powered MediLux™ Pulsed Light System and, later that year, the NeoLux™ Pulsed Light System.  Another year later, in 2004, it introduced the even more powerful and more versatile StarLux® Pulsed Light and Laser System and in February of 2007, Palomar introduced the high powered StarLux® 500 Pulsed Light and Laser System.  (The EsteLux, NeoLux,  MediLux, StarLux, and StarLux 500  are collectively referred to as the "Palomar Products.")

12.      The Palomar Products practice the inventions claimed in the '568 patent and '844 patent.

13.     In addition, the Palomar Products have a unique, distinctive, and immediately recognizable design, which itself is a Palomar trade dress.  This design is characterized by a horizontally-aligned base console, with a forwardly-curving sloped top, a rounded front edge, and a docking port and holsters to mount and store the handpieces located on the right and left side of the console.  The design is also characterized by half-moon shaped handpieces that have rounded, color-coded spots (red, yellow, green, blue, and violet) on the flat sides.  Together, all of these non-functional elements combine to create a clean, simple design (the "Palomar Trade Dress") that appeals to purchasers.  The Palomar Trade Dress is depicted below:

A.      MediLux & StarLux Base Consoles

 

B.      Handpieces

 

- 4 -



14.     Used worldwide, the Palomar Products are renown not only for their unique, distinctive appearance, but also for their exceptional versatility, efficacy, ease of use, and patient comfort and safety.  The Palomar Products are unmistakable in the marketplace.

15.     Sales of the Palomar Products have exceeded $230 million since their introduction.

16.     Palomar has invested significant resources in promoting the Palomar Products through trade shows at which the Palomar Products are displayed, as well as brochures and advertisements depicting the Palomar Trade Dress.

17.     As a result of Palomar's substantial promotional efforts, the Palomar Trade Dress has become associated with Palomar, as well as with the high quality and usability of the Palomar Products.

US1DOCS 6064801v1

**II.     Alma's Knock-Off Efforts**

18.     On information and belief, beginning in approximately May 2003, Alma began manufacturing, marketing and selling aesthetic systems that use MGH's patented technology, as claimed in the '568 and '844 patents.

19.     In addition, beginning in approximately April 2004, Alma began manufacturing, marketing, and selling under the brand name "Harmony" a lower-quality aesthetic system that, in addition to using the patented technology, appears the same or substantially similar to the Palomar Trade Dress.  The Harmony has a design that is virtually identical to that of the Palomar Trade Dress (and unlike that of other light-based aesthetic systems on the market today).  A comparison of the Palomar Trade Dress and the Harmony appears below:

A.1. Palomar Trade Dress Console               A.2.   Harmony Console







B.1.  Palomar Trade Dress Handpieces          B.2.  Harmony Handpieces



20.     The Harmony is an obvious attempt to duplicate the unique and distinctive look of

the Palomar Trade Dress and confuse or deceive the purchasing public.  Alma thereby is

attempting to trade on the distinctiveness and reputation of genuine Palomar Trade Dress with a

cheaper, lower-quality knock-off.

21.     Unlike the Harmony Products, which appears virtually identical to the Palomar

Trade Dress, other aesthetic systems on the market feature designs significantly different from

that of the Palomar Trade Dress.   Numerous alternative designs used by competitors are shown

in Exhibit A attached.

22.     Alma markets and sells the Harmony to many of the same professionals who

purchase products bearing the Palomar Trade Dress.

US1DOCS 6064801v1

23.     As a result of Alma's knock-off efforts, purchasers are likely to be confused, and will likely continue to be confused, mistaken or deceived as to the affiliation, connection, or association of Alma or its low-quality Harmony system with Palomar, or as to the origin, sponsorship, or approval of Alma's Harmony system, or as to the nature, characteristics or qualities of the Harmony system.

## FIRST CLAIM FOR RELIEF
(Patent Infringement)

24.     Palomar and MGH incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

25.     Palomar is the exclusive licensee of U.S. Patent No. 5,595,568 ("the '568 patent") entitled  "Permanent Hair Removal Using Optical Pulses," which is assigned to The General Hospital Corporation ("MGH").  The '568 patent was duly and legally issued on January 21, 1997.

26.     Under U.S.C. ¶ 271(a) and (b), Alma has and continues to infringe and induce infringement of the '568 patent, including without limitation, by making, using, selling and offering for sale products using light-based technology for hair removal, including but not limited to the Harmony™, Sonata™, Soprano™, and SopranoXL™  systems.

27.     Upon information and belief, Alma's infringement has been and continues to be willful and deliberate.

28.     As a result of Alma's infringement, Palomar and MGH will suffer severe and irreparable harm, unless infringement is enjoined by this Court, and have suffered substantial damages.

- 8 -

## SECOND CLAIM FOR RELIEF
(Patent Infringement)

29.     Palomar and MGH incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

30.     Palomar is the exclusive licensee of U.S. Patent No. 5,735,844 ("the "844 patent"), entitled "Hair Removal Using Optical Pulses," which is assigned to MGH.  The '844 patent was duly and legally issued on April 7, 1998.

31.     Under U.S.C. ¶ 271(a) and (b), Alma has and continues to infringe and induce infringement of the '844 patent, including without limitation, by making, using, selling and offering for sale products using light-based technology for hair removal, including but not limited to the Harmony™, Sonata™, Soprano™, and SopranoXL™  systems.

32.     Upon information and belief, Alma's infringement has been and continues to be willful and deliberate.

33.     As a result of Alma's infringement, Palomar and MGH will suffer severe and irreparable harm, unless that infringement is enjoined by this Court, and have suffered substantial damages.

## THIRD CLAIM FOR RELIEF
(Unfair Competition)

34.     Palomar incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

35.     Alma's conduct, including as described above, constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

- 9 -

36.     Alma's unlawful conduct, including as described above, was knowing and willful.

37.     Palomar has suffered, and unless Alma's conduct is enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

WHEREFORE, Palomar and MGH request that the Court:

1.      Adjudge that MGH is the owner and that Palomar is the exclusive licensee of the '568 patent with right to recovery thereunder, and that the '568 patent is good and valid in law and enforceable;

2.      Adjudge that Alma has and continues to infringe and induce infringement of the '568 patent, and that such infringement has been willful and deliberate;

3.      Preliminarily and permanently enjoin Alma, its officers, directors, employees, agents, licensees, successors, and assigns, and all persons in concert with them, from further infringement of the '568 patent;

4.      Adjudge that MGH is the owner and that Palomar is the exclusive licensee of the '844 patent with right to recovery thereunder, and that the '844 patent is good and valid in law and enforceable;

5.      Adjudge that Alma has and continues to infringe and induce infringement of the '844 patent, and that such infringement has been willful and deliberate;

6.      Preliminarily and permanently enjoin Alma, its officers, directors, employees, agents, licensees, successors, and assigns, and all persons in concert with them, from further infringement of the '844 patent;

7.      Adjudge that Alma has and continues to infringe the Palomar Trade Dress, and that such infringement has been willful and deliberate;

8.      Preliminarily and permanently enjoin Alma, its officers, directors, employees, agents, licensees, successors, and assigns, and all persons in concert with them, from further infringing the Palomar Trade Dress, or from using any other mark, brand, or designation that is a colorable imitation of the Palomar Trade Dress, or is likely to be confused with the Palomar Trade Dress, and from engaging in further unfair competition and unfair or deceptive acts or practices;

9.      Award Palomar and MGH compensatory damages;

10.      Treble the damages assessed;

11.      Award Palomar and MGH their costs and reasonable attorneys' fees; and

12.      Award Palomar and MGH such other relief as the Court deems just and proper.

US1DOCS 6064801v1

**PLAINTIFFS CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

PALOMAR MEDICAL TECHNOLOGIES,
INC. and THE GENERAL HOSPITAL
CORPORATION

By their attorneys,


/s/ Kate Saxton
Wayne L. Stoner (BBO # 548015)
Vinita Ferrera (BBO # 631190)
Kate Saxton (BBO # 655903)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000
Dated:  February 23, 2007                    (617) 526-5000

US1DOCS 6064801v1

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Counsel for Palomar Medical Technologies, Inc. hereby certifies that she has conferred

with counsel for Alma Lasers and that counsel for Alma Lasers has represented that it does not

oppose filing of this Second Amended Complaint. (*See* Exhibit 1, attached hereto.)

_____/s/ Kate Saxton_____
Kate Saxton (BBO # 655903)

<u>CERTIFICATE OF SERVICE</u>

       I, Kate Saxton, counsel for Palomar Medical Technologies, Inc., hereby certify that on February 23, 2007 a true copy of the above document was served upon counsel of record by EFC/mailing.


                                       /s/ Kate Saxton
                                       Kate Saxton

US1DOCS 6064801v1

**EXHIBIT "A"**

| I. Candela |
|---|



II.     Cutera



US1DOCS 6064801v1

| III. | Cynosure |
| --- | --- |
|  |  |
|  |  |

IV.     Laserscope







| V. | Lumenis |
| --- | --- |
|  |  |
|  |  |

US1DOCS 6064801v1

VI.    Sciton



US1DOCS 6064801v1

VII.    Syneron